Okay, our second case this morning is number 17-1704 Coho Licensing LLC v. Oath Inc. Please start. Good morning, Your Honors. May it please the Court. The critical issue in this case... In the red brief at 64-68, Oath says that on appeal you've only preserved specific argument with respect to claims 1-3, 8-9, and 14 of the 395 patent, 5, 10, 12-13, and 17 of 096, and claims 2-3 of 065. Is that a correct list? Your Honor, I believe that is a correct list. I actually did not double-check it, but I would like to speak to the fact that, yes, in the district court level we addressed several of the dependent claims, the limitations of the dependent claims in detail. However, the district court did not analyze, failed to analyze the dependent claims in its order. AOL also failed to meet its burden of proving with respect to the dependent claims. Could you answer my question? I apologize, Your Honor. Is that the correct list? I believe it is, Your Honor. I take that as a yes, then. Yes, I can double-check it real quick, Your Honor, or I can get back to you. Well, because my next question is, if so, if that's a correct list, which other claims should be considered, and where in your opening brief did you make specific arguments regarding the limitations of those claims? Yes, Your Honor. I'm trying to do housekeeping, Your Honor. Yes, Your Honor. And I'm trying to get your help. You should know the record. Yes, Your Honor. You should know your brief. Yes, I do, Your Honor. Okay, then you can answer my question. I'm sorry, your question was whether or not we provided, the only place that we provided, we briefed the exact same dependent claims. Is there anything else, and if so, where? No, Your Honor. It's on page 37 through 44, are the dependent claims. Okay, so there is nothing else. What do you mean by nothing else, Your Honor? All right, let me go back. Yes, Your Honor, I believe that they listed the correct number of claims. And you haven't raised anything else? I do not believe we raised any additional claims in the briefing. I'm trying to establish a universe. I apologize? I'm trying to establish a universe. Okay, yes, Your Honor. In answering your report, I do believe that claim 2 of the 395 patent, which is on page 41 of the blue brief, I do not believe that that was included in the district court briefing. Okay. Thank you. Thank you. Yes, Your Honor. Thank you. So back to where you started. You said the critical issue? Yes, Your Honor. Thank you. The critical issue before the court today is whether a district court can, at a Rule 12 motion, find patents ineligible without providing any analysis in the order, without mentioning the technical limitations of the dependent claims, and refusing to consider the relevant evidence presented by the patent holder. First, the district court erred by failing to consider and analyze the technical limitations set forth in the dependent claims. Well, what is it about the dependent claims that's different from the independent claim 1 that was analyzed by the district court? Yes, Your Honor. There's several differences. Two of the dependent claims that we focused the most on, both at the district court level and at this court, was claim 12 of the 096 patent, which contains the consideration of available resources limitation. This limitation, in and of itself, is non-abstract and inventive and should have been considered on its own. Claim 12 is a dependent claim of claim 8 of that patent, which sets forth this motion. Why does that make it non-abstract? I mean, that was a criterion, wasn't it, in the prior art specifically referenced in the patent, right? No, Your Honor. The prior art did not contain any consideration of available computer resources limitation. And, in fact, the non-abstractness and inventiveness of this is the fact that, at the local computer level, the local computer is able to track the availability of computer resources and to sub-allocate tasks based on the availability by first determining the availability of computer resources. In column 1, it refers to switching an allocated task portion to a different computer, but one first assigned level, the task portion becomes occupied. And it describes some of the resource factors involved in determining whether to allocate. So, this prior art that your own patent describes talks about allocating based on resource factors, right? No, Your Honor. The prior art system is a one-tier, single-division system in which the initial allocating computer allocates a task to another computer. Considering resources, right? So, the difference in the COHO patents, Your Honor? Does it consider resources? The initial allocating computer might, Your Honor, but the local computer does not consider network resources. And that's what is novel and unconventional about the COHO patents. The COHO patents claim technology that, at the local computer level, the local computer is actually the one that's making the decision based on a network of factors. But that's the same thing as making the decision to subdivide the work further, right? Yes, but it is doing so based upon network factors, such as whether or not there's computer failure, whether or not there's network latency. And that was not claimed in this top-down approach by the prior art. The top-down approach by the prior art only has the initial allocating computer doing one division, sending it to a computer, which, if there is an error at that local computer in the prior art, then the local computer has to send that task back up to the initial allocating computer. And that is less efficient than the technology claimed in the COHO patents, where in COHO... But Column 3, you specifically say, note that the term allocate and its conjugations may refer to initial allocation or subsequent suballocation. After all, the allocation process is self-similar. And you go on to further describe how, essentially, it's the same thing, only doing it over again. Yes, Your Honor. Essentially, it is self-similar. There is another allocating. There is another portion. It's being repeated. In rapid litigation, this court said that repeating a step can be found to be an inventive concept, can be found to be patent-eligible. But the COHO technology actually goes beyond repeating a step. It's the consideration at the local level of the network factors. It's the division, the allocating, and the transferring steps at the local level, which the PTAB actually found those steps to be. I don't understand what you're saying. What do you mean at the local level? It just means that you're doing the same thing when you consider subdivision that you did when you considered division in the first place, right? Correct, but it's being done at a different level. So in the prior art, Your Honor, you would have an initial allocating computer, which would send a task to a computer below. If there was a problem at that second computer, at that below computer, if that computer was failing, if it was running slow, if there were storage capacity issues, then that computer would have to send the task back up to the initial allocating computer, and then the initial allocating computer would have to send the task back down to whatever computer it wanted to send it to. Whereas here, the initial allocating computer sends the task down to the local computer, sub-allocating computer, and the sub-allocating computer is able to determine, based on computer resources, network factors, that this computer is not behaving properly, this computer is failing, this computer doesn't have enough storage space, and based on that determination is then able to send the task on. So you're essentially skipping several steps. You're not having to send it back up. But it's doing the same thing that was done in the original computer, right? It's acting just like the initial allocating computer, is it not? Well, it is acting as the initial allocating computer in that it is able to divide, subdivide the task, to allocate the task, and to transfer the task. Yes, correct. But that was something that was not found in the prior art, Your Honors. I don't see anything in the specification that describes that as new, that says the prior art couldn't accomplish X or Y or Z. Yes, Your Honor. If you turn to Column 1, for instance, APPX 118, this is in the 395 patent, but the patents share the specification. At line 52, it talks about U.S. patent numbers 388 and 225, and it describes the same computer was being used for allocating, monitoring, and reallocating task portions. So in the prior art, it was this one computer, this initial allocating computer, that was doing all the steps. But you would agree that the second step here, the reallocating, is done in exactly the same way that the initial allocation is done, right? Well, Your Honor, the… Yes or no? No, because, I mean, the PTAB… No, you did not agree with me when I asked you that question? I apologize. Do you mind restating the question? The question is whether when the second tier computer does the reallocating, is it doing the same thing, the same process, that the original computer did in the initial allocation? It is, but it's doing it at the local level, and that's important for multiple reasons. It wasn't found in the prior art. Is that the inventive concept? Yes, it's one of the inventive concepts, Your Honor. What other inventive concept is there? The fact that there is a multi-tiered distribution that was not found in the prior art. And then within the context of the dependent claims, there are also other inventive concepts which were not considered by the district court in its order. And the district court, I mean, one of the major errors here is that the district court failed to even consider these limitations. But where in the specification do you discuss the concept of doing this allocation at a local level being unique or novel or even describe how it's done? Yes, Your Honor. Well, for example, Column 1, APPX118, again, beginning... So other than referring to a prior patent that didn't do it. Yes, Your Honor. It happens to be the same column. Oh, no, no, Your Honor. That's not all. Column 1 of APPX118, beginning at 63, line 63, discusses how in the COHO technology, a computer which has been allotted a distributed processing task may itself determine to reallocate a portion of its subtask, for example, in order to meet a schedule of its performance profile deteriorates before expectation. This was a technical problem that was set forth in the patent that was not addressed in the prior art. How does this patent tell you how to solve that supposed technical problem? Yes, Your Honor. This patent sets forth the solution, a specific implementation of the solution. For example, in Figure 2 of the patent, which is located on page APPX113, this shows an exemplary architecture of a network with the relational components between the computers. It's just describing what's claimed, right? It's not telling you how to do it. Figure 2 describes the architecture, and then if you look at Figure 3B, that describes a series of processing steps, which includes two steps of dividing a task and distributing it to the computers below, and then those computers at the local level can, again, subdivide those tasks. But again, it's just describing what's claimed. It's not describing how to accomplish it. Your Honor, it sets forth the processing steps, which is describing how to accomplish it. And then, of course, in the claims, it also sets forth these processing steps and how to accomplish the solution. So if you put it into words, it would say in Figure 3, do it exactly the same way as the initial allocating computer. Well, Your Honor, I mean, it is subdividing tasks as the initial allocating computer is, but like I said, it's different because it's doing it at the local level, and that was something that was not taught in the prior art, and that's something that the PTAB... So I just put your diagram into words. Excuse me, Your Honor, I didn't hear you. I said I just put your diagram into words, Figure 3B. I mean, essentially, Your Honor, but it's put into words in the specification as well. It goes through and describes how it's a series of processing steps and how the tasks are subdivided based upon various factors. And as I mentioned, Your Honor, this is very... Do you want to save rebuttal time? Oh, yes, Your Honor. All right, we'll give you two minutes for rebuttal. Thank you. Mr. Katz? Good morning, Your Honors. May it please the Court. I'd like to address just a couple of points that counsel for the appellant addressed. First, it simply is not the case that the district court ignored the dependent claims. The court's below opinion... That's on the face of the opinion. Excuse me? That's on the face of the opinion. Yes, the court in footnote 2 of the opinion explicitly notes that he need not expressly address each asserted claim because he concluded that claim 1 was representative of all the claims because they are substantially similar and linked to the same abstract idea. Further, there was... Right, but it's very clear that they asked him to consider the dependent claims. I mean, we'd have to agree, and he didn't really explain much in the opinion as to why he thought it was representative. He just said it was. That's not enough, is it? Yes. For us to say you automatically don't have to look at the dependent claims if you just say this is representative and of inquiry? The court considered all of the briefing, which included briefing on behalf of the appellant addressing specific dependent claims, which we addressed as well. So all of the briefing was submitted to the court, and this was addressed at oral argument as well. The dependent claims were discussed. So I do not think that... Is claim 12 different? Is claim 12 different from... I mean, it's actually different from claim 1, right? It talks about doing the allocation at the sub-allocation level, correct? At the sub-computer level. That's exactly what claim 1 describes as well. Claim 1 specifically talks about an initial level of dividing a task into a plurality of task portions by an allocated computer. Right, and then each one... And they keep getting re-divided. So the question is, in claim 12, that there is the... It's not just the question of it keeps getting re-divided, but the re-division decisions are made at a different level. No, the same concept is in claim 1. It's the... If you look at the element... 1, 2, 3, 4, 5, it says said sub-allocating computer dividing said task portion into a plurality of sub-task portions. That's the second level. It's the same as claim 12. So here's the real question is... We're just accepting your lawyer argument that you think it's the same as claim 12, but the judge never explained why it was the same as claim 12. Doesn't he have to do that? I don't think there is any precedent that requires the district court to write in its order and address in its order each dependent claim of the patent if the judge concludes that the dependent... That claim 1 is represented... A claim is representative of those claims. There's no requirement for him to address... So how is the statement in claim 1, where they're re-allocating, how does that subsume the concept of consideration of available computing resources at that stage? Sure. So that portion of the claim, which we addressed in our briefing, is merely the application, again, of conventional technology, and it's discussed as being the prior art in the specification of this patent. So, for example... Appendix 118 in the discussion of the prior art, the specification itself notes that the prior art considered resource factors involved in determining whether to allocate a task portion to a computer, including switching an allocated task portion to a different computer if the one first assigned the task portion becomes occupied. So the determination of available resources is disclosed as a prior art. It's conventional technology. So that element of claim 12 does not add anything to the abstract idea. What's your response to the argument that in the prior art, you actually had to go back to the original computer if there was some question of the need to analyze computer resources once the suballocation occurred? Well, that's just the nature of repeating the allocation. So if there is only one tier, the whole point is if one of the allocated computers is busy, the task gets allocated to another computer. Of course, inherently, if you have another layer, then there are additional computers that the task can be allocated to. But, again, that's not adding anything to the basic concept that you can divide a task multiple ways. It doesn't matter how many times you divide the task into how many computers, just as it would be in the case of organizing human experience. You can have any number of people, and you can divide a task any number of ways into any number of tiers. That's simply an abstract concept. My problem with the whole thing is that there's an assumption there that the initial allocating computer can't do a thousand different tasks at once. And, of course, it can. So it can have multiple initial allocations operating from the initial allocating computer. Correct. The initial allocating computer can allocate a task to a hundred different subcomputers. Just in addition on the point of whether the court has to address, in its opinion, each of the dependent claims, this court has held in the Cleveland Clinic case and the content extractions case that that is not necessary in those cases as well. There was no claim-by-claim discussion in the lower court's opinion, but this court held that because the claim discussed by the district court was representative, it was sufficient to provide an explanation of why all of the patent claims should be invalidated. There's no distinction here in this case. In fact, if anything, there was more evidence that the district court considered the dependent claims here because there was briefing on it and oral argument on those claims. I assume that when you filed IPRs on this,  Yes, Your Honor. And yet the PTAB, whether or not it's binding on the district court, specifically found that the prior art didn't disclose what this patent discloses, right? Correct. We believe that was incorrect. But again, the PTAB's analysis was limited to just the specific prior art that was presented to it. It wasn't addressing a 101 question. And it also was not addressing 101. So the fact that the specific... I don't have any problem with those arguments. My point is what you're saying here, is that the reason we should assume that Claim 12 isn't anything different is because the prior art all did that. And yet you didn't seem to be able to point to any prior art that did that. Well, the prior art that we're pointing to here is the specification itself. So this was disclosed in the patent. And the... I don't recall now what the PTAB's decision was as to Claim 12, and whether the PTAB acknowledged that the consideration of resources was in the prior art or not. I would be surprised if it concluded that it was not, given the disclosure in the patent specification. I don't think you have to go any further than you're opposing counsel's concession on the role of the initial allocating computer compared to the sub-computers. Correct. It's the same exact process, which is admitted in the specification. There really is no inventive concept by simply repeating something that is an abstract concept and is well-known, and is merely being applied here in a conventional way. The patent specification is replete with discussions that this is applied to generic computers and a generic network. There is no specific implementation discussed anywhere in the claims, which distinguishes this case from this Court's decisions finding that certain patents were patentable when there's a specific implementation discussed. These claims don't have that. Anything further? If there are no further questions, I will waive my time. Thank you, Mr. Fann. Ms. Scott, you have two minutes. Thank you, Your Honor. In this case, the District Court, on a Rule 12c motion for judgment on the pleadings, erred in failing to consider and to provide any analysis regarding the dependent claims, which in and of themselves did contain patent-eligible concepts. Are you conceding now that the independent claim was unpatentable? No, Your Honor. We're not conceding that Claim 1 of the COHO patents is unpatentable, if that's your question. We're saying that the Court didn't even consider the dependent claims, which was clear error at this stage. It designated Claim 1 of the 395 patent as a representative claim without even looking at... Wait a minute. How can you say it didn't look at it? Well, the only mention of the dependent claims in the order is a footnote, and it doesn't... Was it argued and presented to the Court? Yes, Your Honor, it was argued and presented to the Court. So you can't say it didn't look at it? It heard oral argument on it, yes, Your Honor, and it was in the briefing, yes, Your Honor. However, first of all, AOL had the burden of proving that those claims were patent-ineligible, and AOL did not meet that burden. And then the Court further erred in not providing any sort of analysis in its order, which this Court has said, you know, the Federal Circuit is not the Court which should be doing the analysis. The District Court is the Court in which should be doing the analysis. In fairness, while the District Court didn't, you know, show its work, like, you know, in its math homework, it did say that it gave a thorough analysis of the claims and the specifications. It did, Your Honor, and that footnote, it also says only that the limitations in all other claims are abstract. It didn't even reach the step two of the Alice analysis. So even if you're just looking at the footnote, that's clear error because it didn't consider step two of Alice. So I see my time is up, Your Honor. If you have any other questions. Thank you, Ms. Spence. Thank both counsel. The case is submitted. That concludes it.